UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
:
WALTER TRIPLETT :
: CASE NO. 3:09-CV-01281
Petitioner, :
:
vs. : OPINION & ORDER
: [Resolving Doc. No. 1, 12, 13]
STUART HUDSON, Warden, :
:
Respondent. :
:
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

The Petitioner, Walter Triplett, files motion under 28 U.S.C. § 2254 for a writ of habeas corpus. [Doc. 1.] With his petition, Triplett seeks relief from his Ohio convictions for aggravated murder and aggravated robbery. [Doc. 1.] Respondent, Stuart Hudson, Warden of the Pickaway Correctional Institution, opposes the petition. [Doc. 10.]

On November 8, 2010, Magistrate Judge Kenneth S. McHargh recommended that this Court deny Triplett's petition. [Doc. 12.] Triplett objects to one portion of the Magistrate Judge's Report and Recommendation. [Doc. 13.] For the following reasons, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation and **DENIES** Triplett's petition for a writ of habeas corpus.

**I. Background**

This habeas petition arises after Petitioner Triplett's April 8, 2005, conviction for aggravated robbery and aggravated murder. On November 20, 1998, officers from the Toledo Police

Case No. 3:09-CV-01281
Gwin, J.

Department found Paul Wiggins laying in a pool of blood underneath a table in Petitioner Triplett's apartment, which was located at 3327 North Detroit Avenue, in Toledo, Ohio. [Doc. 9 at 7.] The victim had suffered multiple blunt force injuries from at least one cylindrical object. [Doc. 9-2 at 112.]

Five days later, on November 25, 1998, Petitioner Triplett surrendered to the Toledo Police. [Doc. 9 at 7.] Triplett told the investigating officers that he found Wiggins's body in his apartment, had become afraid, and then left the apartment. [*Id.* at 7-8.] Triplett admitted that the apartment was his, but also told the police that he allowed Wiggins to sell drugs out of the apartment in exchange for drugs and money. [*Id.* at 7.] Noticing a foreign substance on Triplett's shoes during the interview, the officers collected Triplett's shoes to be analyzed by the crime lab. [Doc. 9-2 at 107-08.] The shoes were delivered to the police crime lab on November 27, 1998, but were ultimately not analyzed. [*Id.* at 107-08.]

The murder of Paul Wiggins remained unsolved; in 2003, however, the cold case unit reopened the file. [Doc. 9 at 8.] On June 24, 2003, the Toledo Police again interviewed Petitioner Triplett. [*Id.* at 8.] As part of the investigation, Triplett's shoes were reexamined and officers found a patch of blood on them. [*Id.* at 8.] The shoes were sent to the Bureau of Criminal Identification and Investigation for DNA testing; the result of the test indicated that the blood on the shoes belonged to Wiggins, the victim. [Doc. 9-2 at 107-08; 112-113.]

On June 24, 2003, the Lucas County Grand Jury indicted Triplett on one count of aggravated murder, in violation of Ohio Revised Code § 2903.01(B), and one count of aggravated robbery, in violation of Ohio Revised Code § 2911.01(A)(3). [Doc. 9-2 at 1-2.] On June 26, 2003, Petitioner Triplett pled not guilty to all charges. [Doc. 9 at 7.]

Case No. 3:09-CV-01281
Gwin, J.

The case proceeded to trial for the first time on February 28, 2005 and on March 2, 2005, the trial court declared a mistrial. [*Id.* at 28.] On April 4, 2005, the trial proceeded for a second time. [*Id.* at 28.] At the second trial, two analysts from the Bureau of Criminal Identification and Investigation testified regarding the DNA test performed on Triplett's shoes. Analyst Julie Cox testified that the DNA profile taken from blood on Triplett's shoe was consistent with the victim's DNA. Triplett objected to this testimony as inadmissible hearsay because Cox did not perform the DNA test herself, but only conducted the technical review as a qualified peer. The trial court overruled the objection. [Doc. 9-2 at 112-13.] On April 8, 2005, a jury found Triplett guilty as to all charges. [*Id.* at 62.] On April 21, 2005, Triplett was sentenced to consecutive sentences of life imprisonment without possibility of parole for twenty years on the aggravated murder charges and ten years imprisonment on the aggravated robbery charge. [Doc. 9 at 15-16.]

On September 5, 2006, Triplett filed a timely appeal with the Court of Appeals for Lucas County, which raised five assignments of error.[1] [*Id.* at 26-27.] On January 18, 2008, the Court of Appeals affirmed Triplett's convictions. [Doc. 9-2 at 124.] On February 29, 2008, Triplett filed a timely appeal with the Supreme Court of Ohio and raised three propositions of law.[2] [*Id.* at 125.] However, on June 4, 2008, the Supreme Court of Ohio dismissed Triplett's appeal as not involving

---

[1] The five assignments of error included: (1) violation of Triplett's right to confront witnesses and due process under the Fifth, Sixth and Fourteenth Amendments, and alternatively, ineffective assistance for failing to raise the confrontation claim, (2) prosecutorial misconduct in violation of the Fifth, Sixth and Fourteenth Amendments; (3) error to deny Triplett's motion to dismiss for insufficient evidence, (4) re-sentencing as to count Two required because of a Foster issue, and ineffective assistance for counsel's failure to raise the issue, and (5) cumulative errors deprived Triplett of a fair trial in violation of Fifth, Sixth and Fourteenth Amendments. [Doc. 9-2 at 26-27.]

[2] The three propositions of law included: (1) a Sixth Amendment confrontation clause violation resulting from the introduction of DNA evidence without analyst's testimony, (2) a Sixth Amendment violation as result of imposing a sentence based solely on facts determined by judge, and (3) a Sixth Amendment violation due to ineffective assistance of counsel. [Doc. 9-2 at 129.]

Case No. 3:09-CV-01281
Gwin, J.

any substantial constitutional question. [*Id.* at 157.]

On June 4, 2009, Triplett filed the current petition for a writ of habeas corpus under 28 U.S.C. § 2254. [Doc. 1.] In his petition, Triplett asserts three grounds for relief: (1) that he was denied his Sixth Amendment right to confront the witnesses against him when the trial court permitted the introduction of DNA test results even though the forensic analyst who performed the tests did not testify at trial and was not subject to cross-examination; (2) that the imposition of maximum and consecutive prison terms based solely on facts determined by the judge contravenes the Sixth Amendment; and (3) that he was denied the effective assistance of counsel when his attorney failed to object to the imposition of maximum and consecutive prison terms based solely upon facts found by the judge. [*Id.* at 5-7.]

On November 8, 2010, Magistrate Judge McHargh recommended that the petition be denied because the first ground of relief was without merit; because the second ground of relief was procedurally defaulted; and because Triplett withdrew his third ground of relief. [Doc. 12.] On November 22, 2010, Triplett timely filed objections to the Report and Recommendation. [Doc. 13.]

**II. Legal Standard**

*II.A    Procedural Bars to Review*

A habeas petitioner must overcome several procedural barriers before a federal court will review the merits of the petition. *Daniels v. United States*, 532 U.S. 374, 381 (2001).

The first procedural bar that a habeas petitioner must overcome is the statute of limitations. Under 28 U.S.C. § 2244(d)(1), habeas petitions must be filed within one year from the latest of the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. 28 U.S.C. § 2244(d)(1)(A).

Case No. 3:09-CV-01281
Gwin, J.

Second, a petitioner must exhaust his state remedies or have no remaining state remedies before a federal court will review a petition for writ of habeas corpus. 28 U.S.C. § 2254(b)-(c). This requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 324 (6th Cir. 1987) (quoting *Picard v. Connor*, 404 U.S. 270 (1971)). Both the factual and legal basis for the claim must have been presented to the state courts in order to be considered "fairly presented." *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006). While a district court should not grant relief on unexhausted claims, *Palmer v. Carlton*, 276 F.3d 777, 781 (6th Cir. 2002), where relief no longer exists in state court, a court may not dismiss the petition for failure to exhaust state avenues. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

Finally, absent either cause and prejudice or a finding of actual innocence, a federal court may not reach the merits of claims that have been procedurally defaulted in state court by a state prisoner. *Reed v. Farley,* 512 U.S. 339, 354-55 (1994); *William v. Anderson,* 460 F.3d 789, 805-06 (6th Cir. 2006). A claim may be procedurally defaulted in two ways. *Coleman v. Thompson*, 501 U.S. 722, 748 (1991). One way that a petitioner may procedurally default a claim is by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.* If, due to the petitioner's failure to comply with the procedural rule, the state court does not reach the merits of the issue and the state procedural rule is an independent ground for precluding relief, then the claim is procedurally defaulted. *Maupin v. Smith,* 785 F. 2d 135, 138 (6th Cir. 1986). A second way that a petitioner may procedurally default a claim is by failing to raise and pursue a claim through the state's "established appellate review process." *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the

Case No. 3:09-CV-01281
Gwin, J.

claim, then the claim is procedurally defaulted. *Engle v. Issac*, 456 U.S. 107, 125 n.28 (1982).[3/]

The Sixth Circuit uses a three-step analysis to determine whether a claim is procedurally defaulted.[4/] *Maupin*, 785 F.2d at 138-39. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule; (2) whether the state courts actually enforced the state procedural sanction; and (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review. *Id.* However, a petitioner's procedural default may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *Id.*

II.B     *Substantive Standard of Review*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-123, 110 Stat. 1214 (1996) ("AEDPA"), controls a federal court's review of the merits of a state prisoner's habeas corpus petition. AEDPA limits federal review to only those claims in which a petitioner contends that he is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). AEDPA provides that federal courts cannot grant a habeas petition for any claim that the state court adjudicated on the merits unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence

---

[3/] This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n.28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id.*

[4/] Courts often refer to the *Maupin* test as a four-step analysis. However, the oft repreated fourth step - a determination of whether cause and prejudice will excuse a procedural default - is not a necessary inquiry to determine whether a claim was procedurally defaulted. Rather, that step is relevant only after a procedural default is found.

Case No. 3:09-CV-01281
Gwin, J.

presented in the State court proceeding." 28 U.S.C. § 2254(d).

"A state court's legal decision is 'contrary to' clearly established federal law under § 2254(d)(1) 'if the court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court on a set of materially indistinguishable facts.' An 'unreasonable application' occurs when 'the state court identified the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.' Under this standard, a state court decision is not unreasonable simply because the federal court concludes that the state decision is erroneous or incorrect. Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law." *Lorraine v. Coyle*, 291 F.3d 416, 421-22 (6th Cir. 2002).

The Supreme Court recently elaborated on the objectively unreasonable standard in *Harrington v. Richter*. 131 S.Ct. 770 (2011). The Court specified that habeas relief is limited to "cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." *Id.* at 786. In determining this, the court must "determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Id.*

### III. Analysis

Triplett's petition initially presented three grounds for relief. [Doc.1.] Only one ground remains contested, however, since Triplett previously withdrew his third ground of relief – an

Case No. 3:09-CV-01281
Gwin, J.

ineffective assistance of counsel claim[5/] – and does not object to the Magistrate Judge's Report and Recommendation finding that the second ground of relief – a Sixth Amendment challenge to the imposition of maximum and consecutive prison terms – was procedurally defaulted. [Doc. 11; Doc. 12 at 6-12; Doc. 13 at 5.][6/] Having conducted its own review of the record and the parties' briefs, the Court agrees with the recommendation of Magistrate Judge McHargh that Triplett's second ground for relief is procedurally defaulted for failing to satisfy Ohio's contemporaneous objection rule. [Doc. 12 at 6-11.] The Court, therefore, adopts the Report and Recommendation and dismisses the Petitioner's second ground for relief.

III.A. *Confrontation Clause Violation*

The Court will now proceed to the sole remaining ground for relief, in which Triplett says he "was denied his Sixth Amendment right to confront the witnesses against him when the trial court permitted introduction of DNA test results when the forensic analyst who performed the tests did not testify at trial and was not subject to cross-examination." [Doc. 1.] The Magistrate recommends that this Court deny Triplett's petition because the state court's decision to admit the DNA test results was not contrary to nor an unreasonable application of federal law. [Doc. 12.] Triplett objects to this finding, arguing that the state courts unreasonably applied *Crawford v. Washington*, 541 U.S. 36 (2004). [Doc. 13.]

    i. Procedural Bars to Review

Before reaching the merits of this Petition, the Court will first consider whether there are any

---

[5/] In this third ground for relief, Triplett argues that he was "denied the effective assistance of counsel when his attorney failed to object to the imposition of maximum and consecutive prison terms based solely upon the facts found by the judge." [Doc. 1.] Triplett has since withdrawn this ground for relief as a result of new case law contrary to his position [Doc. 11 at 8-9.] It therefore was not considered by the Magistrate Judge, nor will it be reviewed by this Court.

[6/] Where a party does not object to a Magistrate Judge's report and recommendation, a district court may adopt that report without review. *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

-8-

Case No. 3:09-CV-01281
Gwin, J.

procedural bars preventing judicial review of this claim. *Daniels v. United States*, 532 U.S. 374, 381 (2001). First, the Court finds that Triplett's state remedies are exhausted. Triplett raised his Confrontation Clause claim on direct appeal to the Lucas County Court of Appeals, Sixth District, and to the Supreme Court of Ohio. [Doc. 9 at 3-4.] Triplett therefore "fairly presented" his claim to the state courts. *See Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006). Second, no procedural default issues have been raised as to the first ground of relief and the Court finds none. Finally, the Court also finds that Triplett's petition is timely filed. The Supreme Court of Ohio dismissed Triplett's appeal on June 4, 2008 and Triplett filed this habeas petition on June 4, 2009. [Doc. 1.] Accordingly, since no procedural hurdles bar this Court's review, the Court will now proceed to the merits of Triplett's petition.

    ii. Merits

Petitioner Triplett objects to the Magistrate Judge's finding that *Crawford v. Washington* was not unreasonably applied during his trial in 2005 when the trial court admitted a laboratory report analyzing the blood that was found on his shoes. [Doc. 13 at 2-5.] During his trial, the prosecution offered as evidence a laboratory report, prepared by Cassandra Agosti, who worked at the Bureau of Criminal Identification and Investigation. [Doc. 9 at 11.] The report analyzed the DNA in the blood that was found on Petitioner Triplett's shoes and the report concluded that the DNA matched that of the victim, Paul Wiggins. [*Id.*] During the trial, Julie Cox, an employee at the laboratory, testified regarding the results of the test and also testified that she was familiar with the report. [*Id.*] Petitioner Triplett objected to the admission of this testimony, saying that it was inadmissable hearsay. [*Id.*] The trial court overruled this objection and Julie Cox testified to the jury that the DNA removed from the shoes matched the victim's. [*Id.*]

-9-

Case No. 3:09-CV-01281
Gwin, J.

Petitioner Triplett now argues that admission of the report and the accompanying testimony by Julie Cox violated his Sixth Amendment right to confront witnesses against him under *Crawford v. Washington* – which was issued *prior* to his trial – and *Melendez-Diaz v. Washington* – which was issued *after* his trial. [Doc. 11 at 3-6; Doc. 13 at 2-5.] Triplett says that the trial court unreasonably refused to extend *Crawford* to forensic reports prepared in the course of police investigations. [Doc. 11 at 3-5.] Triplett argues that the forensic report in question, "authored by an agent of the prosecution, fell squarely with the core class of statements covered by *Crawford*," and thus, should have been excluded under the Confrontation Clause.

Thus, the Court must determine whether the state court's decision to admit the report was an "unreasonable application" of *Crawford v. Washington*. This is a difficult standard to meet, as a state court's erroneous or incorrect application of federal law is not considered to be objectively unreasonable. *See Schriro v. Landrigan,* 550 U.S. 465, 473 (2007) (describing the unreasonable requirement as a "substantially higher threshold"). Indeed, a state court's ruling will be upheld where "fairminded jurists could disagree on the correctness of the state court's decision." *Harrington*, 131 S.Ct. at 786. Nonetheless, a state court's application of federal law may be held unreasonable is if it refuses to extend "existing Supreme Court precedent to new factual situations where it should apply." *Hoffner v. Bradshaw*, 622 F.3d 487, 495 (6th Cir. 2010).

In assessing the reasonableness of the state court's refusal to extend *Crawford* to laboratory reports, the Court must consider the state of the law at the time of Petitioner Triplett's trial. In *Crawford*, the Supreme Court completely reformulated the standard for determining when the admission of hearsay statements in criminal cases is permitted under the Confrontation Clause of the Sixth Amendment. In *Crawford*, the Court held that cross-examination is required to admit prior

-10-

Case No. 3:09-CV-01281
Gwin, J.

testimonial statements of witnesses that have since become unavailable. For over 20 years prior to that decision, the controlling standard for admitting statements that unavailable witnesses made to other persons was set forth in *Ohio v. Roberts*. 448 U.S. 56 (1980). According to *Roberts*, if a witness is unavailable, that witness's testimony could be admitted through a third person if it bears "adequate indicia of reliability." This was true if the statement fell within a "firmly rooted hearsay exception" or had "particularized guarantees of trustworthiness." 448 U.S. at 66. Under *Roberts* framework, state and federal courts consistently rejected the notion that the lab analyst's testimony was necessary for lab results to be admissible. *Melendez-Diaz*, 129 S.Ct. at 2543, 2553-68 (Kennedy, J., dissenting).

Although written in broad terms, the Supreme Court originally crafted the new *Crawford* rule narrowly, defining testimonial statements as "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Crawford*, 541 U.S. at 68. The Supreme Court's decision in *Crawford* did not clearly repudiate prior decisions that failed to find a Confrontation Clause violation when laboratory results were admitted without the analyst's testimony. In 2009, however, the Supreme Court addressed this specific issue in *Melendez-Diaz*, holding that laboratory reports prepared for trial are testimonial and that admission of such reports into evidence without the testimony of the lab analyst presents a Confrontation Clause violation. *Melendez-Diaz,* 129 S.Ct. at 2532. However, despite this rule now being more clear, lower courts subsequent to *Crawford*, but prior to *Melendez-Diaz*, were left to determine whether *Crawford*'s prohibition on testimonial statements applied to medical and scientific laboratory reports.

Although the Supreme Court characterized *Melendez-Diaz*'s holding as "little more than the application of our holding in *Crawford*," the extent to which *Crawford* applied to forensic laboratory

-11-

Case No. 3:09-CV-01281
Gwin, J.

reports created great confusion among lower federal and state courts and remained an unresolved issue until *Melendez-Diaz*. Indeed, the courts who addressed this question generally found that the *Crawford* rule did not apply to these laboratory reports. For example, the Supreme Court of Ohio addressed the gap left open by *Crawford* in *Ohio v. Crager*, holding that DNA reports are non-testimonial. 879 N.E.2d 745 (2007). The Supreme Court of Ohio found that the DNA reports were indistinguishable from autopsies, which are themselves treated as non-testimonial business records under *Crawford*. *Id.* at 753 (citing *Crawford*, 541 U.S. at 56). The court concluded that the introduction of DNA reports without the testimony of the analyst who conducted the report did not raise a Confrontation Clause violation. *Crager*, 879 N.E.2d at 758.

Many other courts addressing the issue also held that *Crawford* was not violated by the admission of laboratory reports where the technician who prepared the report was not available for cross examination. *See, e.g.*, *United States v. Ellis*, 460 F.3d 920 (7th Cir. 2006) (records establishing presence of methamphetamine in defendant's system were non-testimonial business records); *People v. Geier*, 161 P.3d 104, 133-40 (Cal. 2007) (holding that a DNA report was not testimonial under *Crawford*); *Commonwealth v. Vasquez*, 923 N.E.2d 524, 532 & n.11 (Mass. 2010) (collecting cases showing "the unsettled nature of confrontation clause jurisprudence in *Crawford's* wake"); *State v. Forte*, 629 S.E.2d 137, 143-44 (N.C. 2006) (holding that serology reports are not testimonial); *State v. Dedman*, 102 P.3d 628, 634-39 (N.M. 2004) (holding that the results of blood alcohol tests are not testimonial in light of *Crawford* and are admissible as public records); *People v. Brown*, 801 N.Y.S.2d 709, 709-13 (N.Y. Sup. Ct. 2005) (holding that the records of DNA tests are not testimonial); *but see State v. March*, 216 S.W.3d 663, 664-65 (Mo. 2007) (finding that laboratory report prepared solely for prosecution to prove an element of the crime charged is

Case No. 3:09-CV-01281
Gwin, J.

testimonial).

While the majority in *Melendez-Diaz* notes that those cases which reply upon the framework of *Ohio v. Roberts* were inconsistent with *Crawford*, 129 S.Ct. at 2533, the above-cited cases nevertheless reflect the state of the law at the time of Triplett's trial. At the time of Triplett's trial, it was unclear how far the new *Crawford* rule reached. Taken together, they suggest that the rule that DNA reports are testimonial under *Crawford* was hardly "clearly established federal law" for the state court in Triplett's case to run afoul of, as is required to grant habeas relief under 28 U.S.C. § 2254(d)(1). Generally speaking, it is difficult to hold a state court decision unreasonable for refusing to extend existing Supreme Court precedent when that precedent does not speak directly to the issue. Moreover, here, to have found the laboratory report inadmissible in Triplett's case, the state court would needed to have resolved an ambiguous Supreme Court precedent in a manner that contradicted not only the precedent of the Supreme Court of Ohio, but also the mainstream interpretation of *Crawford*.

Accordingly, the Court finds that the state court did not unreasonably refuse to extend *Crawford* to exclude the laboratory report admitted in Petitioner Triplett's trial. Not only had courts prior to *Crawford* refused to find Confrontation Clause violations in similar scenarios, but the rule announced in *Crawford* was itself vague and invited legitimate disagreement over its reach. *See, e.g.*, *Vega v. Walsh*, 2010 WL 2265043, at *3-4 (E.D.N.Y., May 28, 2010) (denying habeas relief and collecting cases showing that "the number of courts that found laboratory reports and similar forensic analysis to be non-testimonial following *Crawford* suggests that reasonable jurists differed on the application of *Crawford* to the evidence at issue in *Melendez-Diaz*").[7]

---

[7] The result of the foregoing is similar to an ineffective assistance of counsel claim raised before the Southern District of Ohio in *Smith v. Warden, Lebanon Correctional Institution*. 2010 WL 3075276 (S.D. Ohio, Aug. 4, 2010).

Case No. 3:09-CV-01281
Gwin, J.

### IV. Conclusion

For the foregoing reasons, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation and **DENIES** Triplett's petition for a writ of habeas corpus. However, given that this petition raises a previously unresolved issue of constitutional law, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision would be taken in good faith. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

IT IS SO ORDERED.


Dated: March 17, 2011          s/ *James S. Gwin*
                                           JAMES S. GWIN
                                           UNITED STATES DISTRICT JUDGE

---

The court refused to hold that petitioner's lawyer rendered ineffective assistance of counsel by failing to raise a Confrontation Clause claim, prior to the decision in *Melendez-Diaz*, but after *Crawford*, when the trial court admitted a lab report analyzing a controlled substance without the testimony of the report's analyst. The court found that it was not objectively unreasonable for petitioner's counsel to fail to raise such a claim, as to do so would require the attorney to predict the future development of the law.